STACEY E. JAMES, Bar No. 185651
sjames@littler.com
LITTLER MENDELSON
A Professional Corporation
501 W. Broadway, Suite 900
San Diego, CA 92101-3577
Telephone: 619.232.0441
Fax: 619.232.4302

Attorneys for XTRA Lease LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE ZEMAN,<br><br>        Plaintiff,<br><br>   v.<br><br>XTRA LEASE LLC, and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. 2:13-cv-04990-DDP-E<br><br>**DECLARATION OF GERALD G. KNAPTON IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; EXHIBITS "1" THROUGH "11"**<br><br>Hearing Date: September 19, 2016<br>Time:   10:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Dean D. Pregerson<br>Complaint Filed: June 7, 2013 |

4829-2367-8262.1

– 1 –

## DECLARATION OF GERALD G. KNAPTON

1.    I, Gerald G. Knapton, make this declaration in support of Defendant XTRA Lease LLC's Opposition to Plaintiff LUKE ZEMAN's Motion for Attorney's Fees (the "Fee Motion") in Case No. 2:13-cv-04990-DDP-E.  I am making this Declaration as an expert witness, based on matter (including my specialized knowledge, skill, experience, training and education) perceived by, or personally known to me, or made known to me that is of a type that may reasonably be relied upon by an expert in forming an opinion upon the subject to which my testimony relates.

### I.    BACKGROUND AND QUALIFICATIONS OF EXPERT

2.    My background, qualifications as an expert, and experience is more fully set forth in Exhibit 1 attached to this Declaration.  I was educated at Brown University, U.C., Berkeley, and the School of Law at U.C.L.A.  I am an attorney at law licensed to practice in the State of California since 1977, and I am admitted to all federal courts within California and the Court of Appeals for the Ninth and Third Circuits.  I am a partner/shareholder of the law firm Ropers, Majeski, Kohn & Bentley, which has offices in Los Angeles (where I am based), San Francisco, Redwood City, San Jose, Las Vegas, Seattle, New York City, Boston, and Paris.  I have been at Ropers Majeski since July 2002, and most of my time is spent as an expert for legal billing and ethical issues.

3.    I have personally reviewed far over $4.0 billion dollars in legal fees and work product.  I have reviewed hourly legal bills for professional services and supporting work product in many appeals and trials.  Many of my fee matters are based on labor & employment law and included overtime claims arising out of disputes over the classification of employees, as well as "donning & doffing," lunch breaks calculations, timely payments of wages, wage statement information, unfair competition and similar claims as part of the litigation.  I have also reviewed hourly legal bills and supporting work product in cases involving allegations of contract disputes, California Code of Civil Procedure §1021.5 "private attorney general" claims, Fair Employment and Housing Act (FEHA) disputes, age and other kinds of discrimination, employment matters, as well as a vast assortment of other matters such as banking disputes, employment retaliation claims, wage & labor matters, individual & class actions in statutory-interpretation matters,

pharmaceutical cases, "Brown Act" compliance matters, notice compliance matters (for "clean water act" and "catalyst" cases), accounting cases, "civil rights" cases, retail credit compliance litigation, truth in lending lawsuits, discrimination lawsuits, Fair Labor Standards Act (FLSA) lawsuits, and individual actions for a great variety of clients who have questions about the charges.

4.      My past experience as an expert includes reviewing the bills and work product for requests for attorney fees.  I have reviewed hundreds of motions to shift fees for cases where the legal work was trial courts and appellate courts, and in single-arbitrator or in panel arbitrations. Many of these motions were based on "attorney's fee provisions," codes, or statutes.  I have also reviewed fees to determine the reasonableness of such fees, including for those to be submitted as part of a settlement or as part of a motion to shift fees.  I have reviewed work product and actual legal bills for law firms, corporations, partnerships, insurance companies, cities, counties, trustees, and individuals for legal work in trial courts and for appellate work.  My firm submits its legal bills to some clients via Tymetrix360, so I am familiar with that billing program.

5.      I have also written and lectured on the issue of reasonableness and allocation of legal fees.  I have been qualified, and testified, as an expert witness on attorney fees on more than 50 occasions—including before both judges and juries in trials and in arbitrations.

## II.    FACTUAL BACKGROUND

6.      I have reviewed the litigation files and fee application in this matter and understand the facts of this matter to be as follows.

7.      On June 7, 2013 the Complaint commencing this action was filed in the Los Angeles County Superior Court, which alleged causes of action for: 1) Overtime, 2) Failure to Provide Meal Periods, 3) Failure to Furnish Accurate Wage Statements, and 4) Unfair Competition (B&P Code § 17200).

8.      On November 14, 2013, a First Amended Complaint ("FAC") was filed in the United States District Court, which alleged causes of action for: 1) Overtime, 2) Failure to Provide Meal Periods, 3) Failure to Furnish Accurate Wage Statements, 4) Unfair Competition

1    (B&P Code § 17200, and 5) Civil Penalties Under the Private Attorneys General Act of 2004

2    (Labor Code § 2698).

3        9.    A settlement package was offered by the Defendant in February of 2014 but it was

4    not accepted by the Plaintiff.

5        10.   On June 23, 2014, Plaintiff filed and served a Motion for Partial Summary

6    Judgment with supporting documentation seeking to establish that there was no merit to the

7    Defendant's first six affirmative defenses. The Defendant filed and served its opposition papers

8    on June 30, 2014 and Plaintiff filed and serviced his Reply papers on July 7, 2014.

9        11.   By Order dated August 5, 2014, this Court held as follows:

10           In light of questions of material fact with respect to Plaintiff's job duties and
             responsibilities created by the proffered testimony of Freeman, King, and Hill,
11           Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 38) is DENIED
             without prejudice.
12
         12.   Pursuant to stipulation of the parties the Court bifurcated the trial. The first phase
13
     was a three-day jury trial on March 3 – 5, 2015 which only addressed Plaintiff's claim for
14
     overtime compensation and the Defendant's affirmative defenses applicable to that claim. At the
15
     conclusion of this phase the jury found in favor of the Plaintiff and awarded him the full amount
16
     of overtime compensation that he sought.
17
         13.   Following this verdict, the parties were ordered to participate in a judicial
18
     settlement conference that was held on November 6, 2015 regarding Plaintiff's remaining claims
19
     for missed meal periods, wage statement violations and PAGA penalties, but they were not able
20
     to resolve these claims.
21
         14.   However, on April 22, 2016, Defendant served an offer of judgment pursuant to
22
     Fed. R. Civ. Proc. 68, which Plaintiff accepted.
23
         15.   On July 13, 2016, this Court entered the following Judgment:
24           Pursuant to the F.R. Civ. P. 68 Offer of Judgment made by DEFENDANT XTRA
             LEASE LLC on April 22, 2016, which was accepted by PLAINTIFF LUKE
25           ZEMAN on April 28, 2016, it is hereby ADJUDGED and ORDERED that
             judgment is hereby entered in favor of LUKE ZEMAN and against XTRA LEASE
26           LLC on the following terms:

27           1.  Payable to Plaintiff Zeman – Two Hundred Two Thousand Four Hundred
                 Sixty Five Dollars and Twenty-One Cents ($202,465.21);
28

4829-2367-8262.1                                        – 4 –

2.  Payable to non-party Trevor Opitz – One Thousand Eight Hundred Dollars and No Cents ($1,800.00);

3.  Payable to non-party Brett Peterson – One Thousand Three Hundred Fifty Dollars and No Cents ($1,350.00);

4.  Payable to the California Labor and Workforce Development Agency – Fifteen Thousand Seven Hundred Fifty Dollars and No Cents ($15,750.00);

5.  After entry of such Judgment, Plaintiff to move the court for payment of his reasonable attorneys' fees and costs as permitted by law.

16.  Pursuant to the judgment, Plaintiff subsequently filed his Motion for Attorney's Fees (the Fee Motion").

## III.    THE FEE MOTION

17.  On July 27, 2016, Plaintiff's counsel filed the instant Fee Motion.  This Motion states in pertinent part as follows:

Plaintiff's attorneys have reasonably spent approximately 1,074 hours over three years litigating this matter, obtaining full relief for Plaintiff and maximum penalties for the State and other harmed individuals. At reasonable market rates, and after exercising billing judgment, Plaintiff's resulting lodestar is $572,481.50. Plaintiff is seeking reimbursement of reasonable out-of-pocket costs as well as an upward adjustment to the lodestar using a multiplier of 1.7, to account for the contingent risk assumed by Plaintiff's attorneys and the complete success achieved, representing a total fee request of $972,544.21. (Pages 5:20 – 6:2.)

In an exercise of billing judgment, Plaintiff's counsel removed 152.3 hours from the fee request, to exclude hours that are excessive, redundant or otherwise unnecessary. Keating Decl., ¶ 16; see *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). (Page 7:15-18.)

In addition to the attorney hours described above, Plaintiff's attorneys seek to recover $17,525.66 in out-of-pocket costs they advanced to successfully litigate the case. See *Grove v. Wells Fargo Fin., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (nontaxable out-of-pocket costs that are normally billed to a client may be recoverable as attorney's fees if they are ordinarily billed to a client and are not included as overhead in the hourly rate).  (Page 10:13-18.)

Plaintiff is filing a separate Application to the Clerk to Tax Costs, pursuant to Local Rule 54-2, to recover statutory costs.  (Page 10, fn. 5.)

IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests an award of attorney's fees in the amount of $972,544.21, in order to compensate Plaintiff's attorneys for the full market value of their work. (Page 12:16-18.)

18.    Plaintiff has also filed and served the Declaration of Jennifer Keating in Support of

the Fee Motion, which states in pertinent part:

13. Plaintiff now seeks an award of reasonable attorney's fees in the amount
of $972,544.21, representing $955,018.55 in fees and $17,525.66 for out-of-pocket
costs. The requested attorney's fee represents the lodestar fee for work reasonably
and necessarily performed during more than three years of litigation, subject to a
fee enhancement using a multiplier of 1.7 on all fees for work other than that
related to the instant fee motion. I calculated the lodestar fee using the following
market rates, supported by the Declaration of Richard M. Pearl filed herewith and
paragraphs 18-21 below:

| **Biller** | **Rate** |
| --- | --- |
| Jennifer Keating | $625 |
| Elizabeth Gropman | $310 |
| Paralegal/Law Clerk | $200 |

### Summary of Contemporaneous Billing Records

14. Attached hereto as Exhibit G is a chart that accurately summarizes the
lodestar fee, representing the total number of hours worked by LC attorneys on the
case, meaning those hours that could reasonably be billed to a fee-paying client.
Exhibit G shows the hours spent by each attorney and paralegal/law clerk on the
case from its inception through July 25, 2016, and also shows the number of hours
spent by LC attorneys and staff in the aggregate by litigation task, multiplied by
the current Los Angeles area market rate for her or his services. The hours
reflected in Exhibit G are documented by the contemporaneous time records
maintained by LC after hours excluded in the exercise of billing judgment.

15. The hours reflected in Exhibit G include time worked on this matter
between February 2013 and July 25, 2016. I anticipate LC attorneys will spend
some number of additional hours working on this case in connection with
completing the briefing and hearing of this motion, and will submit a supplemental
declaration and evidence with our reply brief on the instant motion in that regard.

16. To prepare the summary chart attached as Exhibit G, I reviewed the
complete set of contemporaneous time records maintained by LC in TimeSlips (a
time and billing software program) and assigned task-based billing codes to each
time entry. Exhibit H to this declaration is a listing of the task-based billing codes I
used to perform this analysis. I then reviewed the time billed by each billing
attorney, paralegal and law clerk, and then exercised billing judgment to delete
time entries that, in my professional judgment, were excessive, duplicative or
otherwise could not reasonably be billed to a fee-paying client. I deleted a total of
152.3 attorney, paralegal and law clerk hours. Exhibit I to this declaration is a
spreadsheet that includes all of the remaining time entries for each billing attorney,
paralegal and law clerk through July 25, 2016, organized in chronological order.

17. It is the custom and practice of our firm to bill clients for work
performed in 6-minute increments. As a general rule, we do not "block bill," but
instead bill time separately for each discrete task performed. Exhibit I identifies
the attorneys, paralegals and law clerks that performed each discrete item of
service along with a description of the service performed, the time associated with

performing that service, and the relevant rate. The attorneys, paralegals and law clerks that performed services on this case are identified in the time and billing statements as follows: JK = Jennifer Keating; EG = Elizabeth Gropman; CC = Cate Coelho (paralegal); RP = Rosemary Prem (paralegal); AL = Alex Leenson (law clerk).

18. When this case commenced three years ago, I was an associate at LC. Aaron Kaufmann was the partner who brought in the case and who I generally reported to, while I was primarily responsible for handling all aspects of the litigation. In my exercise of billing judgment, I have cut all of Mr. Kaufmann's hours from this request. I used paralegals and law clerks to perform discrete tasks that did not need to be performed by an attorney wherever reasonably possible. I became a partner in the firm in July 2014. An associate, Elizabeth Gropman, was assigned to the case to assist with pretrial preparations and during the trial, so that the pretrial and trial phases of the litigation were staffed by two attorneys. Ms. Gropman and I attempted to avoid duplication by dividing the work as much as possible. To my knowledge, Defense counsel was represented by at least two attorneys during the pretrial phase, and by at least two attorneys and one paralegal who were present during the trial. The approximately 1,074 hours worked on this case were reasonable and necessary in my view. I believe the litigation was handled efficiently and with appropriate staffing. . . .

**Out-of-Pocket Costs**

22. In addition to the attorney hours described above, Plaintiff seeks to recover $17,525.66 in out-of-pocket costs advanced by LC which are not normally included in a statutory bill of costs, such as non-deposition-related travel, mediations costs, messenger and shipping charges and deposition videos. Exhibit J to this declaration is a detailed summary of these out-of-pocket costs incurred. Attached to Exhibit J are the supporting documents maintained by LC to support those costs.

19.    We have reviewed the timekeeper hours information of Exhibits G, H and I attached to the Keating Declaration and tried to reconcile the numbers reflected in each such Exhibit.  Unfortunately, they do not match up.

20.    Specifically, Ms. Keating states that the "hours reflected in Exhibit G are documented by the contemporaneous time records maintained by LC after hours excluded in the exercise of billing judgment."  Exhibit G reflects **1,074.7** hours resulting in a lodestar fee of **$572,481.50**.

21.    However, Ms. Keating also states that "I deleted a total of 152.3 attorney, paralegal and law clerk hours. Exhibit I to this declaration is a spreadsheet that includes all of the remaining time entries for each billing attorney, paralegal and law clerk through July 25, 2016, organized in chronological order."  This is presumably the "contemporaneous time records

1  maintained by LC after hours excluded in the exercise of billing judgment" which support Exhibit

2  G.

3      22.    We have entered all of the time billing entries that appear on Ms. Keating's

4  Exhibit I into a MS Excel spreadsheet which is attached hereto as Exhibit 6, which shows the

5  total hours to be **1,025.6** resulting in fees of **$551,517.50** using the face rates requested or shown.

6      23.    The difference between Ms. Keating's totals reflected in her Exhibit G and Exhibit

7  I is therefore 49.1 hours.  However, this discrepancy is partially explained by the fact that Ms.

8  Keating includes 41.6 hours in Exhibit G for the instant Fee Motion, which is not supported by

9  any of the individual time billing entries in Exhibit I.  That leaves a discrepancy of 7.5 hours

10  between the two Keating Exhibits which we have not been able to reconcile.

11      24.    As discussed below, "when a lawyer seeks to have his adversary pay the fees of

12  the prevailing party, the lawyer must provide detailed records of the time and services for which

13  fees are sought."  (Hensley v. Eckerhart, 461 U.S. 424, 440-41 (1983) (Burger, C.J., concurring)).

14      25.    Therefore, because Plaintiff's counsel has chosen to not submit any actual time

15  billing entries in support of the instant Fee Motion, and is seeking an additional 7.5 hours that is

16  also not supported by actual time billing entries, I do not believe that Plaintiff can recover for

17  these hours.

18      26.    I have therefore used as my starting point the totals reflected by Plaintiff's actual

19  time billing entries as reflected in Ms. Keating's Exhibit I.  This reduces the total fee request as

20  follows:

21  | Exhibit G Balance | Unsupported Time | Exhibit I Balance |
22  | $572,481.50 | -$20,964.00 | $551,517.50 |

23      27.    In addition, Ms. Keating represents that all time for senior partner Aaron Kaufman

24  ("ADK") has been deleted from this Fee Motion.  (Declaration of Jennifer Keating, page 7:13-

25  17.)  However, our review of the actual bills filed in support of the Fee Motion indicates that time

26  billing entries for ADK remain in Ms. Keating's Exhibit I.  We have therefore eliminated all time

27  recorded by Mr. Kaufman, which is reflected in Exhibit 11 attached hereto.

28

28.    This adjustment reduces the fees sought in the Fee Motion as follows:

| Previous Balance | Kaufman Charges | Adjusted Balance |
| --- | --- | --- |
| $551,517.50 | -$18,197.50 | $533,320.00 |

## IV.    THE FEE-SHIFTING AUTHORITY

29.    It is essential for me to examine the fee-shifting authority being asserted in a fee-shifting proceeding because that often affects the analysis I need to perform in order to assist the Court. The papers I have reviewed indicate that plaintiff seeks to recover his attorneys' fees pursuant to Local Rule 54-10, PAGA and California Labor Code §§ 1194(a) and 2699(g)(1). This authority provides as follows:

> **L.R. 54-10 Filing Date for Requests for Attorneys' Fees.** Any motion or application for attorneys' fees shall be served and filed within fourteen (14) days after the entry of judgment or other final order, unless otherwise ordered by the Court. Such motions and their disposition shall be governed by L.R. 7-3, et seq.
>
> **Cal. Labor Code § 1194.  Recovery by employee of unpaid balance of full amount of minimum wage or overtime compensation**
>
> (a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.
>
> **Cal. Labor Code § 2699.  Recovery of civil penalty for Labor Code violation through civil action brought by aggrieved employee; Amount of penalty; Attorney's fees and costs; Limitations; Distribution of penalties recovered; Provision of specified items to agency; Approval of settlement by superior court; Applicability; Regulations . . .**
>
> **(g)**
>  **(1)** Except as provided in paragraph (2), an aggrieved employee may recover the civil penalty described in subdivision (f) in a civil action pursuant to the procedures specified in Section 2699.3 filed on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed. Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs, including any filing fee paid pursuant to subparagraph (B) of paragraph (1) of subdivision (a) or subparagraph (B) of paragraph (1) of subdivision (c) of Section 2699.3. Nothing in this part shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part.

30.     It is my understanding that *if* the Court determines that the conditions of this authority have been satisfied, then the traditional lodestar approach is applied to determine reasonable & necessary fees.  The lodestar is calculated by assembling the reasonable time and applying the reasonable hourly rates in the community for *noncontingent litigation* of the same type, pursuant to the relevant and settled law for fee-shifting as I know it:

> We approved the calculation of attorney fees beginning with a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 [104 Cal.Rptr.2d 377, 17 P.3d 735].) (emphasis supplied)

## V.     HOURLY RATE ANALYSIS

31.     The Fee Motion and its supporting papers request compensation at the following hourly rates:

| Biller | Rate |
| --- | --- |
| Jennifer Keating | $625 |
| Elizabeth Gropman | $310 |
| Paralegal/Law Clerk | $200 |

32.     I have therefore examined the firm's bills regarding the rates requested, and compared those rates with the objective evidence of non-contingent hourly rates in the community for the same type of litigation as discussed below.

### Sources of Hourly Rate Data

33.     Over the many years of my work reviewing legal invoices I have seen thousands of invoices by many law firms and I have noticed that the actual rates that the firms charge and that real clients pay are often not the same as plaintiffs' contingency rates or the national firm rates for all manner of legal work that are published in "surveys" of rates, so I have become reluctant to rely upon just those requests or the rather broad surveys if better data is available.  Thankfully that has finally happened.

34.     In the last few years two sources of actual prevailing rates that I have found to be very useful have become available: The Real Rate Report (Wolters Kluwer) and the Legal Billing

1   Reports (Thomson-Reuters).  I subscribe to these publications.  They both assemble data on

2   hourly rates that are actually paid by clients in the real world and those rates reflect what I also

3   see in actual invoices for Los Angeles and other California litigation.  The most recent Real

4   Report is the 2015 version.

5         35.       The 2015 Real Rate Report derives its data from LegalVIEW and the Tymetrix360

6   program that thousands of law firms use to submit their electronic invoices to be paid.  The latest

7   report covers billings for legal work from 2012 to 2014 in a $9.8 billion dollar dataset of more

8   than 4,500 lawyers and 151,000 timekeepers.  I attach the entire 182-page Report including the

9   scope and methods of the 2015 Real Rate Report hereto as **Exhibit 2**.  This data is "anonymized"

10  but (in the current iteration) is now broken down by several useful categories such as the type of

11  matter, the court venue city, the size of the law firm and the category of timekeeper (partner and

12  associate).  Rate data for Labor & Employment litigation in Los Angeles is assembled in the Real

13  Rate Report in the "Labor & Employment" dataset which is defined at page 181 of Exhibit 2 to

14  include Discrimination, Retaliation and Harassment/EEO and Compensation and Benefits

15  litigation. (Please see page 181 of the Data Methodology pages included in **Exhibit 2**.) That is

16  clearly the kind of litigation that is now at Bar.

17        <u>**The Size of the Law Firms**</u>

18        36.       While rates do vary depending on the location of the litigation and the subject

19  matter of the work, it has been my experience that the hourly rates also vary by the size of the law

20  firm.  That variance is also clearly shown by the data assembled into five levels by hundreds of

21  examples for partners and associates practicing employment law in Los Angeles at various size

22  law firms.

23        37.       The law firm representing the Plaintiff has 23 attorneys and is based in Oakland.

24        38.       For ease of reference we attach as **Exhibit 3** is a copy of page 128 of the 2015

25  Real Rate Report that has 495 examples of actual rates paid for noncontingent Labor &

26  Employment cases in Los Angeles at firms with 50 or fewer lawyers and for four other levels for

27  rates at larger firms  The rates for Labor & Employment legal work in Los Angeles for attorneys

28  at firms with 50 or fewer attorneys is shown on page 128 for Partners as ranging from $240.00 in

4829-2367-8262.1                        – 11 –

the First Quartile[1] to $367.00 in the Third Quartile.  The median rate[2] is $325.00 per hour. The Associate hourly rate data is $190.30 for First Quartile to $275.00 for the Third Quartile with a Median rate of $225.00 per hour. This is also what I see actually paid for this type litigation and that is the rate structure that appears to be the non-contingent hourly rate for similar litigation in Los Angeles before any consideration of a multiplier.

39.    Attached hereto as **Exhibit 4** is a copy of page 18 of the 2015 Real Rate Report. The data on paralegal rates is assembled for six kinds of Labor & Employment work but not quite as granular as the data for attorneys (as it does not provided the data by city or by size of law firm), but at page 18 the Rates for paralegal time for "Labor and Employment: Wages, Tips and Overtime | Litigation is as follows: $110.00 per hour for the First Quartile to $196.50 for the Third Quartile and a Median rate of $148.40, before any consideration of a multiplier for any reason. That is based on 72 examples.

40.    The following table reflects the rates for lawyers and paralegals set forth in attached Exhibits 3 and 4:

| Category | First Quartile | Median | Third Quartile |
|----------|----------------|--------|----------------|
| Partners | $240.00 | $325.00 | $367.00 |
| Associates | $190.30 | $225.00 | $275.00 |
| Paralegals | $110.00 | $148.40 | $196.50 |

41.    Because the instant litigation is a typical employment matter being handled by a firm with less than 50 attorneys, it is my opinion that the median rates set forth above are the relevant noncontingent hourly rates applicable to reasonable time allowed for this matter.

<u>One other cross-check on rates:</u>

42.    The well-known "Laffey Matrix" derived its name from a seminal case.  *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C.1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985).  This is a free resource

---

[1]  Quartiles are values that divide a set of data into four equal parts.
[2]  To find the median, one arranges the rate observations in order from smallest to largest value. If there is an odd number of observations, **the median is the middle value**. If there is an even number of observations, the median is the average of the two middle values.

4829-2367-8262.1                                          - 12 -

published each year by the U.S. Attorney's office for the District of Columbia.  It offers tiered rates for lawyers, differentiated according to their years of experience. It offers only one set of rates without differentiation for the kind of legal work involved or for the size of the law firm. Some courts use this and some do not.  It is helpful in some situations, but perhaps not as relevant as the Real Rate Report data as the Laffey Matrix has no differential according to kind of litigation and nothing based on the size of the law firm. It is not based on actual paid rates.

43.    The name of the Laffey Matrix has recently been changed to the USAO Attorney's Fee Matrix.  Attached hereto as **Exhibit 5** is a true and correct copy of the USAO Attorney's Fee Matrix for 2015-2016.  (Available at: http://www.justice.gov/usao-dc/file/796471/download.)

44.    These rates are accepted in the Washington, D.C. area courts as one factor to consider when setting fees.  Some courts in other areas also use this Matrix, but those courts are required to make adjustments to take into account the cost of a local lawyer's time.  One simple way to take into account the cost of a local lawyer's time is to use federal wage data (available at www.bls.gov/oes) to establish other cities' average wages for lawyers, as compared to that of the District of Columbia.  *Garnes v. Barnhardt*, No. C 02-4428 VRW, 2006 WL249522, at *7 (N.D. Cal. Jan. 31, 2006); *see also Chanel, Inc. v. Doan*, 2007 WL 781976, at *6-7 (N.D. Cal. Mar. 13, 2007); *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 702 (2014).  Therefore, the USAO/Laffey Matrix data for the District of Columbia needs to be adjusted upwards or downwards to apply to the local venue.  Again, the Bureau of Labor Statistics publishes lawyer and paralegal wage data for many locations that make it easy to see how the cost of legal services varies by city.

45.    Attached hereto as **Exhibit 6** are two pages that I printed from the website www.bls.gov/oes regarding federal wage data for lawyers and paralegals for the Washington, D.C. area and the Los Angeles area. As reflected by this Exhibit, the USAO Attorney's Fee Matrix Rates adjusted for the Los Angeles area are as follows:

Adjustment for **Lawyers**:

Los Angeles – Hourly mean wage = $83.22
D.C – Hourly mean wage = $80.09

The ratio of $83.22 / $80.09 means that the rates for Los Angeles would be approximately **104%** of the USAO Attorney's Fee Matrix rates.

Adjustment for **Paralegals and Legal Assistants**:

Los Angeles – Hourly mean wage = $28.49
D.C – Hourly mean wage = $33.44
The ratio of $28.49 / $33.44 means that the rates for Los Angeles would be approximately **85.20%** of the USAO Attorney's Fee Matrix rates.

The following chart shows the adjusted USAO Attorney's Fee Matrix rates:

| Experience 2015-16 | D.C. Rate | L.A. Rate |
|---|---|---|
| 31+ years | $568 | $590.72 |
| 21-30 years | $530 | $551.20 |
| 16 to 20 years | $504 | $524.16 |
| 11-15 years | $455 | $473.20 |
| 8-10 years | $386 | $401.44 |
| 6-7 years | $332 | $345.28 |
| 4-5years | $325 | $338.00 |
| 2-3 years | $315 | $327.60 |
| Less than 2 years | $284 | $295.36 |
| Paralegals & Law Clerks | $154 | $131.20 |

<u>The Various Rates Applied to These Timekeepers:</u>

46.    The following table lists the rates being requested by Plaintiff's counsel as compared to the objective evidence of the Real Rate Report's Labor and Employment practice area median rates and the Los Angeles adjusted rates shown in the USAO Attorney's Fee Matrix:

| Timekeeper | Bar Admit Date/ Experience | Rate(s) requested | Real Rate (Ex. 3) | Real Rate (Ex. 4) | USAO Attorney's Fee Matrix adjusted for L.A. |
|---|---|---|---|---|---|
| Jennifer G. Keating (JK)  Partner Beginning on 8/1/2014 | 11/3/2007  8 years | $625.00 | *$325.00* | N/A | $401.44 |
| Jennifer G. Keating (JK)  Associate Before 8/1/2014 | 11/3/2007  6 years | $625.00 | *$225.00* | N/A | $345.28 |
| Elizabeth R. | 12/13/2013 | $310.00 | *$225.00* | N/A | $327.60 |

| Gropman (EG) Associate | 2 years | | | | |
|---|---|---|---|---|---|
| Paralegals/Law Clerks (CC, RP and AL) | N/A | $200.00 | N/A | *$148.40* | $131.20 |

47.     Because the hourly rates requested by Plaintiff's counsel are not within the general range of the rates that I have seen actually paid or reflected by the 2015 Real Rate Report or even the USAO Attorney's Fee Matrix, I have adjusted the attorneys' rates using the "Median" rates contained in the 2015 Real Rate Report because of the comprehensive and practice-specific nature of this database for actual non-contingent hourly rates as explained above. The rates that I have applied are set forth in bold and italicized type in the table above.

48.     This adjustment reduces the fees sought in the Fee Motion as follows:

| Previous Balance | Rate Adjustment | Adjusted Balance |
|---|---|---|
| $533,320.00 | -$275,528.46 | $257,791.54 |

## VI.     THE FEES SOUGHT BY THIS MOTION ARE EXCESSIVE

49.     It is my opinion that the time-billing entries discussed below were excessively billed.  I partially base this opinion on the following analysis by the U.S. Bankruptcy Court: "In other cases this Court has previously disallowed hours billed in excess of **9.0 hours** in any one day. There are a variety of reasons for doing so, including the Court's perception that efficiency suffers greatly when parties are repeatedly billing in excess of nine hours per day. Additionally, having had private practice experience and fully understanding what it takes to bill an 'honest hour,' I question any bill where a party appears to be seeking to attribute every hour spent at work to a client." (*In re Maruko Inc.*, 160 B.R. 633, 640 (Bankr. S.D. Cal. 1993) (emphasis added).)  I also base this opinion on my own personal experience, which confirms the Court's observation that time billed by an attorney in excess of 9.0 a day is significantly less efficient than time billed during a regular 8 hour day.  However, I have considered each time billing entry individually and have **not** rigidly included entries reflecting any specific number of hours billed in a single day in this category.

50.     My analysis of the time billing entries filed in support of the Fee Motion has revealed the following examples of such excessive billing.

51.     On 2/23/2015, EG billed **10.3** hours for work described as "Pre-trial Conference before the court; Draft trial brief."

52.     On 3/1/2015, EG billed **12.2** hours for work described as "Trial preparation; Witness preparation with LZ; Draft JMOL."

53.     On 3/1/2015, JK billed **12.3** hours for work described as "Prepare for trial (including witness prep and preparing opening statement)."

54.     On 3/2/2015, JK billed **10.6** hours for work described as "Prepare for trial (including witness prep and preparing opening statement)."

55.     On 3/3/2015, EG billed **16.3** hours for work described as "Trial; Draft JMOL."

56.     On 3/3/2015, JK billed **14.7** hours for work described as "Attend trial commencement, where jury selected, opening statements made and first witness commenced; and prepare for trial continuation, i.e., preparing for cross-examination and for plaintiff's case-in-chief."

57.     On 3/4/2015, EG billed **18.7** hours for work described as "Trial; Prep for Zeman testimony and closing."

58.     On 3/4/2015, JK billed **18.8** hours for work described as "Attend second day of trial, where defense completed its case, plaintiff made motion for judgment as a matter of law and began case-in-chief, and parties met in chambers, finalized jury instructions; and prepared for trial continuation, preparing for continuation of plaintiff's case-in-chief and closing statements."

59.     In addition, my review of the charges for the initial research and preparation of Plaintiff's Motion For Partial Summary Judgment were excessive.  Please see **Exhibit 9** attached hereto which lists all such billing entries.

60.     Plaintiff selected a Bay Area law firm Leonard Carder, LLP, which has offices in San Francisco and Oakland.  Plaintiff made that choice despite the fact that there are many local law firms in the Los Angeles area who could have represented him in this matter.  It is therefore my opinion that Plaintiff incurred excessive and unnecessary travel costs as the result of his

1    decision to retain a Bay Area firm instead of a local Los Angeles firm.  The time billed for this

2    excessive travel is reflected in the following table:

| Date | Hours Billed | Billing Description |
|---|---|---|
| 9/23/2013 | 8.2 | return travel to Los Angeles and attend CMC |
| 2/7/2014 | 17.8 | return travel to Los Angeles and attend mediation |
| 3/27/2014 | 3.5 | travel to Los Angeles for deposition |
| 3/28/2014 | 5.0 | return travel from LA following deposition |
| 4/2/2014 | 9.7 | travel to Ontario for depositions (4.5); telephone conference with LZ (.8); prepare for depositions (4.4) |
| 4/4/2014 | 7.9 | taking deposition of Joe Newfield (3.4); and return travel from Ontario (4.5) |
| 4/11/2014 | 9.6 | travel to and from Redlands, CA (6.8); attend continuation of Luke Zeman's deposition (2.8) |
| 7/21/2014 | 12.3 | return trip to LA and attend summary judgment hearing |
| 7/25/2014 | 10.3 | return travel to LA and attend motion to compel hearing |
| 11/6/2014 | 13.1 | travel to Orange and take depositions of two Operations Managers |
| 11/7/2014 | 8.3 | prepare for and take deposition of Operations Manager and return travel from Orange |
| 2/22/2015 | 3.7 | Travel to Los Angeles for pretrial conference |
| 2/22/2015 | 3.2 | Travel to Los Angeles |
| 2/24/2015 | 3.4 | Return from LA following pretrial conference and Plaintiff prep meeting |
| 2/25/2015 | 3.0 | Travel from LA to SF |
| 2/27/2015 | 3.6 | Travel to LA for trial prep meeting with court clerk |
| 2/27/2015 | 3.0 | Travel to LA |
| 3/6/2015 | 3.8 | Return to San Francisco following conclusion of trial. |
| 7/16/2015 | 6.8 | Return travel to Los Angeles and attend CMC. |
| 11/6/2015 | 15.5 | Return travel to LA and attend settlement conference. |

61.    The foregoing are only examples of excessive billing by Plaintiff's counsel.  For a complete listing of all such billing entries please see **Exhibit 8E** attached hereto.

4829-2367-8262.1                                    - 17 -

## VII.    ANALYSIS OF TIME BILLING ENTRIES

62.    I respectfully submit for the Court's consideration the following analysis regarding the time billing entries filed in support of the Fee Motion.

63.    The Chief Justice of the United States has recognized that in the context of fee-shifting motions, the prevailing attorneys seeking to recover their fees from the losing party have a <u>heightened duty</u> to provide clear, convincing and detailed explanations of their charges:

> I read the Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, **the lawyer must provide detailed records of the time and services for which fees are sought**. It would be inconceivable that the prevailing party should not be required to establish at least as much to support a claim under 42 U. S. C. § 1988 as a lawyer would be required to show if his own client challenged the fees. A district judge may not, in my view, authorize the payment of attorney's fees unless the attorney involved has established by **clear and convincing evidence** the time and effort claimed and shown that the time expended was necessary to achieve the results obtained.
>
> A claim for legal services presented by the prevailing party to the losing party pursuant to § 1988 presents quite a different situation from a bill that a lawyer presents to his own client. In the latter case, the attorney and client have presumably built up a relationship of mutual trust and respect; the client has confidence that his lawyer has exercised the appropriate 'billing judgment,' and unless challenged by the client, the billing does not need the kind of extensive documentation necessary for a payment under § 1988. That statute requires the losing party in a civil rights action to bear the cost of his adversary's attorney and there is, of course, **no relationship of trust and confidence between the adverse parties**. As a result, the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed. *Hensley v. Eckerhart*, 461 U.S. 424, 440-41 (1983) (Burger, C.J., concurring) (emphasis added).

64.    In order to analyze whether the moving party has provided sufficiently detailed, "clear and convincing" records of the time and services for which fees are sought in this case, we have examined all bills filed in support of the Fee Motion.

65.    I, along with others working under my supervision, have therefore proceeded to analyze the underlined actual time billing entries set forth in the invoices filed in support of the Fee Motion. In order to perform this work, we have entered each time billing entry into a Microsoft Excel spreadsheet database that was prepared under my supervision and control.  A true and correct copy of this complete database report is attached hereto as **Exhibit 7**.  We have arranged the time entries of all the timekeepers in chronological order, and have added only the comments to the right of the column labeled "Description."

66.    The time billing entries included in Exhibit 7 have been coded using the six columns on the right side of the page labeled A to E.  An "x" in a line under a column may be understood according to this key as follows:

> A = Administrative work;
> B = Block billing;
> C = Vague descriptions;
> D = Duplicative work; and
> E = Excessive time

67.    Attached hereto as **Exhibits 8B – 8E** are true and correct copies of additional spreadsheet analyses.  In order to perform our analysis reflected in these Exhibits, we began by identifying all entries that had an "x" placed next to them.  Each entry with its appropriately marked "x" was then placed into its corresponding spreadsheets which are Exhibits 8A – 8E.

68.    In order to avoid placing a time billing entry into multiple categories, which would result in "double dipping" by taking multiple deductions for the same billing entry, we carefully identified those billing entries that belonged in two or more possible categories.  We then made a copy of Exhibit 7, and deleted all checked boxes indicating objectionable categories except for one such box for each entry.  For example, if a single time billing entry had lines in both column A and B checked, we retained the check for the line in column A but deleted the check for the line in column B.  Thus, we carefully performed our analysis in order to avoid adjusting the charge for an entry twice.

69.    My analysis as supported by Exhibits 8A – 8E is presented in non-alphabetical order.  Employing the methodology described above, I have adjusted the bills filed in support of the Fee Motion as follows:

4829-2367-8262.1                          – 19 –

A = Administrative work = 100% deduction (No such entries);
D = Duplicative work = 100% deduction (Exhibit 8D);
E = Excessive time billed = 40% deduction (Exhibit 8E);
C = Vague descriptions = 30% deduction (Exhibit 8C); and
B = Block-billed descriptions = 30% deduction (Exhibit 8B).

**A.    Column "A" - Administrative Work**

70.    We have carefully reviewed all billing entries filed in support of the Fee Motion in order to determine whether Plaintiff's counsel is seeking to recover for any such work.

71.    In my experience, billing entries reflecting administrative work should not be paid. This includes work such as contacting the court regarding scheduling matters, which should be performed by secretaries or other non-billing firm personnel. Such work should not be billed to the client in the usual attorney-client relationship, and should therefore not be included in a fee-shifting motion.

72.    As reflected in Exhibit 7 attached hereto, Plaintiff counsel is not seeking to recover for any such work. Therefore, we have made no adjustments based on this factor.

| Previous Balance | Column "A" | Adjusted Balance |
|---|---|---|
| $257,791.54 | -$0.00 | $257,791.54 |

**B.    Column "D" - Duplicative Work (Exhibit 8D)**

73.    All time billing entries that were appropriately marked in Column "D" of Exhibit 7 were placed in Exhibit 8D, a true and correct copy of which is attached hereto.

74.    The billing entries that have been placed in Exhibit 8D reflect billable hours that appear to constitute the appearances of two attorneys in connection with motion hearings and "meet and confer" sessions that should have only required one attorney given the many years of experience of Mr. Zeman's counsel in the Labor & Employment practice area.

75.    This adjustment reduces the allowable fees as reflected below in the "Adjusted Balance" column.

| Previous Balance | Column "D" | Adjusted Balance |
|---|---|---|
| $257,791.54 | -$2,227.50 | $255,564.04 |

C.    <u>Column "E" – Excessive Time (Exhibit 8E)</u>

76.    All time billing entries that were appropriately marked in Column "E" of Exhibit 7 were placed in Exhibit 8E, a true and correct copy of which is attached hereto.

77.    The federal courts have disallowed billing for attorneys when their billable hours exceed 9.0 hours in a single day:

> Finally, Attorney 1 lists two days on which she claims to/have billed 11.5 and 11.2 hours, respectively. In my letter of July 16, 1993, awarding fees and costs to Deloitte and Touche, accountants in this case, I observed:
>
> In other cases this Court has previously disallowed hours billed in excess of 9.0 hours in any one day. There are a variety of reasons for doing so, including the Court's perception that efficiency suffers greatly when parties are repeatedly billing in excess of nine hours per day. Additionally, having had private practice experience and fully understanding what it takes to bill an 'honest hour,' I question any bill where a party appears to be seeking to attribute every hour spent at work to a client. Accountants and attorneys are human beings, and not every moment of the working day is productive and billable. Finally, Deloitte's application in its response was silent as to any justification for the repeated 'high billed' days. No emergency (other than self-created) was shown to exist which might justify the charges in some cases. *In re Maruko Inc.*, 160 B.R. 633, 640 (Bankr. S.D. Cal. 1993).

78.    My own experience confirms the observations of the *In re Maruko* court because an attorney's efficiency decreases dramatically for time billed in excess of 9.0 hours per day. However, I have considered each time billing entry individually and **<u>have not</u>** rigidly included entries reflecting any specific number of hours billed in a single day in this category. Time billing entries in this category therefore reflect what clearly appears to be excessive time billed for reviewing and preparing documents, as well as conducting legal research in light of counsel's many years of experience and specialization in the Labor & Employment practice area. (*See* State Bar of California's Committee on Mandatory Fee Arbitration, Arbitration Advisory 98-03, Determination of a "Reasonable" Fee (June 23, 1998); State Bar of California's Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01, Detecting Attorney Bill Padding (January 29, 2003). )

79.     I have also included in this category the examples of excessive billing practices discussed above, along with other billing entries that in my experience clearly appear to be excessive.

80.     All time billing entries that fell within this category were placed into Exhibit 8E, which again was carefully constructed in order to avoid multiple deductions for the same billing entry as explained above.

81.     It is my opinion that a 40% deduction of the excessively billed entries appears is a rather conservative estimate of the percentage of time that was overbilled in light of my own experience and the authority set forth above—which discusses the inefficiency of attorney time billed in excess of 9.0 hours in a single day.

82.     This adjustment reduces the allowable fees as reflected below in the "Adjusted Balance" column.

| Previous Balance | Column "E" | Adjusted Balance |
|---|---|---|
| $255,564.04 | -$39,566.40 | $215,997.64 |

**D.    Column "C" - Vague Descriptions (Exhibit 8C)**

83.     All time billing entries that were appropriately marked in Column "C" of Exhibit 7 were placed in Exhibit 8C, a true and correct copy of which is attached hereto.

84.     Fee-shifting cases following *Hensley*, *supra*, and California Business & Professions Code § 6148 require that legal bills "clearly state the basis thereof." Providing "vague" billing descriptions deprives the client or fee auditor of the ability to accurately assess whether the attorney's billing entries reflect the performance of tasks that were reasonable and necessary. (*White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir. 1983) disapproved of on other grounds by *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987); *see also In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989); *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).)

85.     In the fee-shifting context, vague or missing information may relate to the participants and/or subject matter of meetings, telephone conferences or legal work product, as well as the ultimate purpose of such activity. Therefore, vague billing entries such as unexplained

1    meetings, conferences, emails and research warrant a reduction in the fees billed.  (*H.J., Inc. v.*

2    *Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991); *In Re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir.

3    1989); *see also* State Bar of California's Committee on Mandatory Fee Arbitration, Arbitration

4    Advisory 98-03, Determination of a "Reasonable" Fee (June 23, 1998); State Bar of California's

5    Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01, Detecting Attorney Bill

6    Padding (January 29, 2003).)  In addition, many time billing entries in this category were

7    "REDACTED" to the extent that they are simply unintelligible, which of course precludes any

8    meaningful analysis of whether or not they represent reasonable charges for legal services.

9        86.    The total amount of fees that fall within Column "C" is shown in Exhibit 8C; this

10   was carefully constructed in order to avoid multiple deductions for the same time billing entry as

11   explained above.

12       87.    I have deducted 30% of such entries because in my experience the objectionable

13   descriptions are simply too vague in the context of a fee-shifting motion.

14       88.    This adjustment reduces the allowable fees as reflected below in the "Adjusted

15   Balance" column.

16   | Previous Balance | Column "C" | Adjusted Balance |
     |---|---|---|
17   | $215,997.64 | -$19,402.81 | $196,594.83 |

18   **E.    Column "B" - Block Billing  (Exhibit 8B)**

19       89.    All time billing entries that were appropriately marked in Column "B" of Exhibit 7

20   were placed into Exhibit 8B, a true and correct copy of which is attached hereto.

21       90.    In fee-shifting situations, block billed entries (also called "bundling," "lumping" or

22   "aggregating") combine several discrete tasks into one block of time, which makes it impossible

23   for myself or the Court to determine the exact amount of time spent on each task, and therefore

24   whether the time billed is reasonable.  Federal courts may reduce hours, and therefore fee awards,

25   that are billed in block format.  *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)

26   (recognizing that district courts have the "authority to reduce hours that are billed in block

27   format," but remanding for lower court to "explain how or why the reduction fairly balances"

28   those hours).

91.    California state courts also disfavor block billing in fee-shifting matters. *See Christian Research Institute v. Alnor*, 165 Cal. App. 4th 1315, 1329 (2008) ["Similarly, counsel may not submit a plethora of noncompensable, vague, blockbilled attorney time entries . . ."]. Where an appropriate adjustment cannot be made because of block billing for recoverable and non-recoverable fees, a court may "exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside." *Bell v. Vista Unified School Dist.*, 82 Cal. App. 4th 672, 689 (2000) (emphasis added).

92.    The State Bar of California's Committee on Mandatory Fee Arbitration has concluded that this billing practice can inflate legal fees by up to 30%, and courts have agreed. *Welch*, 480 F.3d at 948 [noting that the district court relied on the State Bar of California's Committee on Mandatory Fee Arbitration]; *see also* State Bar of California's Committee on Mandatory Fee Arbitration, Arbitration Advisory 98-03, Determination of a "Reasonable" Fee (June 23, 1998); State Bar of California's Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01, Detecting Attorney Bill Padding (January 29, 2003).

93.    The attorney seeking to be paid has the burden of establishing that his or her fees and costs are reasonable and necessary through the use of detailed billing statements. *Hensley*, 461 U.S. at 437; *Trs. of the Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000). Requests for legal fees may be denied when "block billing" makes it impossible for the attorney to carry this burden. *Leroy v. City of Houston*, 906 F.2d 1068, 1078-1080 & n.19 (5th Cir. 1990).

94.    However, we have not included time billing entries of 0.30 hours or less in this category.

95.    The total amount of fees that fall within Column "B" is shown in Exhibit 7B attached hereto. Again, some courts have **disallowed all charges** that are block-billed. *Bell*, supra, 82 Cal. App. 4th at 689. However, in my experience, the usual range of deductions for "block billed" time is 10% to 30%. Here, because so many of the "block billed" entries are also objectionable because they also contain vague descriptions, it is my opinion that 30% of the

1    charges should be deducted. That is not a substantial reduction but it is a fair adjustment in my

2    opinion.

3        96.    This adjustment reduces the allowable fees as reflected below in the "Adjusted

4    Balance" column.

5        **Previous Balance**          **Column "B"**          **Adjusted Balance**

6        $196,594.83              -$16,344.75              $180,250.08

7    **F.    Summary of Analysis of Time Billing Entries**

8        97.    I summarize the analysis above as follows:

9            Exhibit G total:              $572,481.50

10            Unsupported charges:              -$20,964.00

11            Kaufman charges:              -$18,197.50

12            Hourly rate adjustment:              -$275,528.46

13            Duplicative work:              -$2,227.50

14            Excessive time:              -$39,566.40

15            Vaguely described work:              -$19,402.81

16            Block Billing:              -$16,344.75

17            **Possible Balance of allowable fees:  $180,250.08**

18        98.    It is therefore my expert opinion based upon my years of experience and the

19    materials that I have reviewed that (if the Court finds the other necessary conditions satisfied) the

20    firm's fee reasonable award may be **$180,250.08.**

21            **VIII.    THE DECLARATION OF RICHARD PEARL**

22        99.    Plaintiff has filed a July 22, 2016 Declaration by Richard Pearl in support of the

23    instant Fee Motion.  I have carefully reviewed that Declaration and respectfully offer the

24    following observations for the Court's consideration.

25        100.    In support of his opinion regarding reasonable hourly rates for Plaintiff's counsel,

26    Mr. Pearl cites decisions by the U.S. District Court for the Central District of California and the

27    Los Angeles County Superior Court.  (Pearl Declaration, ¶ 11.)

28

101.    Mr. Pearl also cites to several **surveys** of legal rates, including a December 2015 Thomson Reuters "Legal Billing Report" which surveys the rates approved for various law firms by the federal Bankruptcy Courts, a January 5, 2015 National Law Journal article regarding its recent rate survey, a January 13, 2014 National Law Journal article regarding its recent rate survey, the former **2013**[3] Real Rate Report Snapshot published by Ty Metrix/Legal Analytics for partners and associates in various cities, and an article published in the Wall Street Journal on April 9, 2013.  (Pearl Declaration, ¶ 12.)

### A.  Large firms

102.    As discussed above, it is my experience that the rates charged by larger firms are usually much higher than those charged by smaller to mid-sized firms such as Leonard Carder. This fact is reflected in the Real Rate Report data discussed above and attached hereto as Exhibits 2 and 3.  Based on this evidence, it is my opinion that the rates charged by the following firms are not applicable to the rates sought in instant Fee Motion.  Therefore, the rates charged by the following firms, which are cited by Mr. Pearl in paragraph 13 of his Declaration, are not determinative of the applicable rates in this matter. Here is his list with an indication of the size of each firm:

> Arnold Porter LLP (approximately 800 attorneys); Bingham McCutchen (approximately 700 attorneys): Cooley LLP (approximately 800 attorneys); Covington Burling (approximately 850 attorneys); Fenwick & West (approximately 300 attorneys); Gibson Dunn & Crutcher LLP (over 1,000 attorneys); Greenberg, Traurig LLP (approximately 1,800 attorneys); Irell & Manella (over 220 attorneys); Jones Day (more than 2,400 attorneys); Kirkland & Ellis (over 1,500 attorneys); Latham & Watkins (approximately 2,000 attorneys); Lieff Cabraser Heimann & Bernstein, LLP (over 50 attorneys); Manatt, Phelps & Phillips (over 330 attorneys); McKenna Long & Adridge LLP (approximately 575 attorneys); Morrison Foerster LLP (more than 1,000 attorneys); O'Melveny & Myers (approximately 700 attorneys); Orrick Herrington & Sutcliffe (over 1,100 attorneys); Paul Hastings LLP (over 900 attorneys); Pillsbury Winthrop Shaw Pittman LLP (approximately 700 attorneys); Quinn Emanuel Urquhart & Sullivan (approximately 700 attorneys); Reed Smith LLP (more than 1,800 attorneys); Sheppard, Mullin, Richter & Hampton (approximately 750 attorneys); Skadden, Arps, Slate, Meagher & Flom (approximately 2,000 attorneys); Wilson Sonsini

---

[3] There was a 2014 Real Rate Report and a much more detailed 2015 Real Rate Report available at that time that Mr. Pearl signed his Declaration.

4829-2367-8262.1                                          – 26 –

Goodrich & Rosati PC (approximately 670 attorneys); and Zelle Ilofmann Yoelbel & Mason, LLP (approximately 80 attorneys).

## B.  Non-Employment Firms

103.    As reflected in the complete copy of the 2015 Real Rate Report attached hereto as Exhibit 2, hourly rates also vary significantly depending on the practice area at issue.  Therefore, the rates charged by the following firms that do not practice Labor & Employment law, which are also cited by Mr. Pearl in paragraph 13 of his Declaration, are not determinative of the applicable rates in this matter. I list each firm with an indication of the firms' specialty:

Cohelan Khoury & Singer (specializing in class action and complex litigation); Greines, Martin, Stein & Richtand (appellate specialists); Hausfeld LLP (Antitrust Law specialists); Kaye, Mclane, Bednarski & Litt (specializes in civil rights and criminal defense); Knapp, Petersen & Clarke (specializing in bankruptcy litigation banking litigation, insurance coverage, corporate and transactional matters); and Law Office of Carol Sobel (civil rights specialist).

## C.  Employment Firms

104.    Therefore, of all the firms cited by Mr. Pearl, the only firms that are even potentially applicable to the rates sought by the instant Fee Motion are those listed for the following eight firms:

Alexander, Krakow & Glick LLP; Altshuler Berzon LLP; Hadsell, Stormer, Richardson & Renick LLP; Kingsley & Kingsley; Kiesel, Boucher, Larson LLP; Litt, Estuar, & Kitson, LLP; Schonbrun, DeSimone, Seplow, Harris & Hoffman LLP; and Spiro Moore LLP.

105.    However, the rates listed by Mr. Pearl for these firms are **not** rates that are actually charged for non-contingent Labor & Employment cases.  Rather, the cited rates include multipliers that have been awarded by the courts on contingency fee matters.  Therefore, the rates set forth in the Pearl Declaration include multipliers which are typically 1.2 or 1.3, and thus do **not** reflect the true rates charged by these firms, who often handle Labor and Employment cases on a contingency basis.

106.    Furthermore, the very few Labor and Employment firms listed by Mr. Pearl constitute an extremely limited sample size which is much too small to have any meaning with

1    respect to the determination of the prevailing non-contingent rates in the Los Angeles community.

2    Rather, the much more reliable source for such information is the 495 examples of actual rates

3    shown on page 128 of the 2015 Real Rate Report attached hereto as **Exhibit 3**.

4        107.    I must therefore respectfully disagree with the position that Leonard Carder's

5    reasonable rates may be determined by the sources set forth in the Pearl Declaration.  My opinion

6    is based on the fact that Mr. Pearl's anecdotal information, the few cited court decisions, the

7    surveys, and the published articles are not an adequate basis for determining the reasonable rates

8    for Leonard Carder in the Los Angeles community for Labor & Employment litigation.

9    Furthermore, the rates purportedly charged by the other law firms listed above are not applicable

10    to Leonard Carder for the reasons set forth above.

11        108.    In paragraph 12 of his Declaration, Mr. Pearl states:

12        The 2013 Real Rate Report Snapshot published by Ty Metrix/Legal Analytics
        summarizes the "real rates" for partners and associates in various cities.  A copy of
13        the relevant pages is attached hereto as Exhibit E.

14        109.    That is a superseded and much smaller Report where the listing for partners and

15    associates in that Exhibit does **not** even include the Los Angeles area and does not reflect any

16    particular practice area. It is also two iterations behind the current 2015 Real Rate Report which

17    has much deeper data on Labor & Employment litigation in Los Angeles.  Citing to this outdated

18    and less comprehensive version is not helpful for making a reasonable determination of the

19    proper hourly rates for Leonard Carder in this matter.

20        110.    Furthermore, relying on the **2013** Real Rate Report is not appropriate for an expert

21    who should not be serving as an advocate for the moving party.  That 2013 iteration was not as

22    detailed as the 2014 and the 2015 Real Rate Report, and the 2013 version does not even have the

23    most recent data. It was obviously superseded by **both** the 2014 and 2015 versions.

24        111.    As discussed fully above, I have instead chosen to rely on the **2015** Real Rate

25    Report, which reflects applicable rates for litigation in Los Angeles area for attorneys at similar

26    sized firms engaged in the **Labor and Employment** practice area. The entire 2015 Report is

27    attached as Exhibit 2  As explained fully above, it is my opinion that the rates reflected in

28

1    **Exhibits 3 and 4** attached hereto accurately reflect the reasonable rates for Leonard Carder in the

2    instant Los Angeles Labor & Employment litigation.

3        112.    Mr. Pearl's Declarations filed in other matters also cite to the same examples as

4    those discussed above, which are many years old and outdated.  The majority of them were never

5    useful in order to evaluate the appropriate rates charged by small to mid-sized firms, and they are

6    clearly not controlling here given the impeccable data regarding the actual, non-contingent rates

7    that are currently being **paid** for similar Labor and Employment matters as reflected in the **2015**

8    Real Rate Report.

9        113.    In addition to his inappropriate cherry-picking of inapplicable sources, Mr. Pearl

10   steps far into an **advocacy** role in paragraphs 18 to 28 of his Declaration when he offers his

11   opinions regarding an appropriate multiplier for this matter.  Rather than being a matter for expert

12   opinion, this issue is the province of the advocates for each side to argue and for the Court to

13   decide.

## IX.    COSTS

15       114.    Leonard Carder also seeks "to recover $17,525.66 in out-of-pocket costs they

16   advanced to successfully litigate the case." (Fee Motion, page 10:13-15.)  I have therefore

17   analyzed the cost items filed in support of the Fee Motion, which are attached to the Keating

18   Declaration as Exhibit J.

19       115.    Attached hereto as **Exhibit 10** is a three-page Excel spreadsheet reflecting my

20   analysis of the non-statutory "costs" sought by the Fee Motion.  The vast majority of these

21   charges (about $12,000) are related to traveling down from Oakland to the Court. In my opinion,

22   the charges for traveling from Oakland to Los Angeles and for lodging in Los Angles were not

23   necessary.  That is because a party seeking to recover for the use of non-local counsel must show

24   that hiring local counsel was "impracticable."  (Horsford v. Board of Trustees of California State

25   University (2005) 132 Cal. App. 4th 359, 399 ["the policies of the FEHA attorney fees provision

26   require that the court consider awarding market value compensation for an attorney who is from a

27   higher fee market, if the plaintiffs demonstrate, as they did here, that hiring local counsel was

28   impracticable."].)  However, Plaintiff has made no such showing in the Fee Motion.  Because of

4829-2367-8262.1                          – 29 –

the enormous size of the Los Angeles legal market for Labor & Employment lawyers, it is my opinion that it was **not** "impracticable" for the Plaintiff to hire local counsel. I have therefore adjusted the hourly rates of Plaintiff's counsel to the prevailing rates in Los Angeles as discussed above. I likewise believe that additional "costs" incurred solely because Plaintiff chose to retain non-local counsel were not necessarily incurred and therefore should not be shifted to the Defendant.

116.    It is long-settled law that the attorney seeking to be paid has the burden of establishing that his or her fees and costs are reasonable and necessary through the use of detailed billing statements. (Hensley v. Eckerhart, supra, 461 U.S. at 437, Trustees v. Tise, supra, 234 F.3d at 427.) I have analyzed each cost item sought by the Plaintiff in the total amount of $17,525.66. Of this amount, it is my opinion that $5,629.63 of such costs appear to be reasonable and adequately supported. However, the remaining $11,896.03 of such costs reflect unnecessary travel expenses incurred by Plaintiff as the result of his decision to hire non-local counsel when the Los Angeles area has many very qualified lawyers who could have very ably represented him in this matter.

## X.    CONCLUSION

117.    Assuming (without conceding) that the Court finds that the plaintiff is entitled to a fee recovery, it is my opinion that the amount of fees and costs that were reasonable and necessary for the legal services rendered in this case may be as follows:

| Fees | Costs | Total |
| --- | --- | --- |
| $180,250.08. | +$5,629.63 | **$185,879.71** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 26, 2016 at Los Angeles, California.

_Gerald G. Knapton_
Gerald G. Knapton

4829-2367-8262.1